IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RHONDA WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 3:25-cv-00259-UJ |
| ) | |
| FIRST DATA CORPORATION, ) | |
| n/k/a/ FISERV, d/b/a MONEY NETWORK, ) | |
| ) | TRIAL BY JURY DEMANDED |
| Defendant. ) | |

## COMPLAINT

COMES NOW Plaintiff Rhonda Walker ("Ms. Walker" or "Plaintiff"), and as her Complaint against the Defendant First Data Corporation, n/k/a Fiserv, d/b/a Money Network ("Money Network"), avers as follows:

## PRELIMINARY STATEMENT

This case arises from the failure of Money Network to properly investigate and credit funds fraudulently extracted from Ms. Walker's Money Network bank account. Ms. Walker's account was compromised on May 8, 2024, when unknown individuals extracted over $11,000.00 from her account in a series of electronic fund transfers ("EFTs") to an unknown bank account, all reflected in the records accessible to Money Network. Ms. Walker does not receive written statements from Money Network, instead she must view her account activity online. She discovered the missing funds on the same day they were withdrawn, May 8, 2024, after receiving a series of emails advising her that her Money Network password had been changed. After resetting her account password, she was able to view the Money Network account online which showed the fraudulent EFTs. She immediately called Money Network and was advised to fill out

a dispute form.

Ms. Walker followed Money Network's instructions and provided Money Network with sufficient information, establishing that the EFTs were unauthorized and fraudulent. Money Network responded by reversing the fraudulent EFTs out of Ms. Walker's First Alabama Bank Account, instead of taking the money from the account it was fraudulently transferred into (which was not an account held by Ms. Walker).

Ms. Walker is not responsible for the unauthorized EFTs from her Money Network account. By failing to provide full credit for those EFTs and failing to properly investigate, Money Network has violated the federal Electronic Funds Transfer Act 15 U.S.C. §§ 1693 *et seq.* (the "EFTA"). Ms. Walker asserts claims under the EFTA for declaratory relief, actual damages, statutory damages, attorneys' fees and costs. She also asserts state law claims all arising under the same set of facts.

## PARTIES

1. Plaintiff is an adult resident of Randolph County, Alabama.

2. Defendant First Data Corporation, now known as Fiserv, does business as Money Network and is a foreign corporation with its principal place of business outside the State of Alabama. Defendant is referenced to herein as "Money Network."

## BACKGROUND FACTS

3. Ms. Walker is a retired grandmother who worked for over thirty-one (31) years as a Hardlines Coach at the Walmart Super Centers in Roanoke and Valley, Alabama. While employed at Walmart, Plaintiff was encouraged by her employer to open an account with the Walmart-affiliate bank - Money Network. She opened a Money Network account and used it for direct deposit of her Walmart paychecks. Plaintiff's Money Network account is identified with an account number ending in 7617 (hereinafter referred to as the "Money Network Account").

4. Plaintiff worked for Walmart until August 17, 2022. After that she did not often use the Money Network Account and it sat mostly stagnant until May 8, 2024.

5. Plaintiff does not receive paper statements for the Money Network Account. In order to access her account, she has to log in through Money Network's website.

6. In 2020, Plaintiff became disabled and in 2021, she applied for disability benefits from the Social Security Administration (SSA).

7. In May 2024, Plaintiff received a lump-sum payment from the SSA for back-pay benefits in the amount of $20,805.75.

8. Because the bank account on record with the SSA was Plaintiff's Money Bank Account, the SSA payment was direct deposited into that account. That deposit was made on May 8, 2024.

9. At all relevant times, Plaintiff also maintained a personal checking account with First Bank of Alabama, ending in 8175 (hereinafter referred to as the "First Alabama Account"), which she uses on a regular basis as her primary account.

10. On the day that the SSA deposit of $20,805.75 was made into Plaintiff's Money Network Account (May 8, 2024), she received email notices that her Money Network password had been reset. This raised immediate concern because she did not initiate the password reset. Plaintiff then accessed her Money Network Account online and, after verifying her information and resetting her password, saw that someone had fraudulently transferred $9,561.90 into an unknown bank account ending in 9228 (hereinafter referred to as the "Hacker Account"). Plaintiff did not authorize or know about that transfer.

11. Plaintiff then immediately transferred $9,561.00 from the Money Network Account

3

into her First Alabama Account in order to avoid further theft and save the remainder of the SSA-deposited funds.

12. Immediately after transferring the $9,561.00 into her First Alabama Account, Plaintiff contacted Money Network and notified the representative that her account had been compromised and that the May 8, 2024 $9,561.90 electronic funds transfer ("EFT") was unauthorized and fraudulent. The representative instructed her to download a Customer Dispute Form from their website and return it to Money Network. Plaintiff was also advised that her debit card had been deactivated, and they would issue her a new one.

13. Nevertheless, the hackers continued to have access to Plaintiff's account and made additional fraudulent EFTs in the amounts of $1,500.00 and $100.00.

14. As instructed, Plaintiff completed Money Network's Customer Dispute Form, gathered all the relevant information and returned the completed form to Money Network by email on the same day, May 8, 2024. At that time, Plaintiff identified the fraudulent $9,561.90 EFT transaction. At that point, she was unaware of the additional $1,600.00 fraudulent transfers.

15. Money Network assigned the $9,561.90 dispute with Dispute Case ID – CMS202405080310173430.

16. On May 10, 2024, Money Network, in an apparent attempt to reverse the fraudulent EFT, initiated an EFT *from Plaintiff's First Alabama Account* into her Money Network account in the amount of $9,561.90. Plaintiff did not request or authorize Money Network to extract funds from her First Alabama Account. She requested reversal of the $9,561.90 fraudulent charge. However, instead of reversing the $9,561.90 fraudulent EFT from the Hackers Account (or some other source), Money Network reversed the transfer that Plaintiff initiated to her First Alabama

4

Account in an effort to save her money from further theft. As a result, she had not been properly credited with *any* amount, let alone the correct amount, as Money Network transferred money from *her own bank account* rather than from the Hacker Account.

17. Plaintiff did not authorize the Money Network EFT from her First Alabama Account. Moreover, the fact that the transfer was not authorized was readily apparent to Money Network.

18. Money Network's unauthorized transfer caused Plaintiff's First Alabama Account to be overdrawn.

19. On or around May 13, 2024, Plaintiff realized the Money Network had extracted money from her account when she attempted to use her First Alabama debit card to purchase gas and was declined. She immediately contacted Money Network.

20. On the same day, Plaintiff sent an email to Money Network advising it of the mistake. She called but was placed on hold for hours before finally reaching someone at Money Network. When she was finally connected, Plaintiff explained the situation and provided all relevant information.

21. The representative instructed Ms. Walker to fill out and submit another Customer Dispute Form. She did so on that same day (May 13th). By that time, Ms. Walker knew about the additional fraudulent EFTs of $100 and $1,500 and she included those in the second Customer Dispute Form. She also sent emails on May 13th and May 15th explaining that Money Network had wrongfully extracted $9,561.90 from her First Alabama Account.

22. Money Network assigned the $1,500.00 dispute with Dispute Case ID – CMS202405130339267330. They also assigned the $100.00 dispute with Dispute Case ID –

CMS202405170720465560.

23.     On May 15, 2024, Plaintiff called Money Network to advise them that First Bank of Alabama advised her that Money Network was attempting to reverse additional funds from her First Alabama Account, but those attempts were blocked by First Alabama Bank.  The representative she spoke with was no help and could only tell Ms. Walker that the dispute is pending.

24.     On the same day, she also emailed the dispute department advising them of the mistakes they continued to make on her Money Network Account and asked for a representative to call her.  No one from Money Network called.

25.     On May 17, 2024, Plaintiff emailed Money Network and requested that a provisional credit be applied to her account for all three fraudulent transactions, totaling $11,161.90.  Money Network did not respond to her email.

26.     At no point during Money Network's "investigation" did anyone from Money Network attempt to contact Plaintiff seeking additional information.

27.     On May 23, 2024, Plaintiff again called Money Network to obtain an update on her disputes.  Once again, the representatives were no help.  They did not seem to understand what was plain from their own records – that Money Network had reversed the fraudulent charges from Ms. Walker's First Alabama Account rather than from the Hacker Account and, in so doing, initiated an unauthorized electronic extraction of Ms. Walker's money.  Instead, they mindlessly instructed her to fill out yet another Customer Dispute Form.

28.     On that same day, Plaintiff emailed the Money Network dispute department advising them of the mistakes they continued to make on her account.  No one from Money

6

Network contacted her for additional information or to discuss the dispute.

29.	Money Network sent Ms. Walker a letter dated May 22, 2024, advising her that it had completed their investigation regarding the $9,561.90 transaction, reversed the transaction, credited her account, and closed the claim.  That was not true.  Instead of reversing the fraud and crediting Ms. Walker's account, Money Network had wrongfully extracted funds from her First Alabama Account.  Instead of correcting the problem, it had made it worse.  Moreover, this mistake was readily apparent from Money Network's own records and the information Ms. Walker provided.  Yet, it made no attempt to correct the mistakes.  It merely closed its file and made no further attempt to rectify the situation.

30.	Plaintiff received two other letters from Money Network dated May 22, 2024, and May 24, 2024, addressing the additional $1,500 and $100 fraudulently extracted by the hackers from Plaintiff's Money Network Account.  Those letters advised that the funds were credited back to the Money Network Account.  However, no further action was taken to correct the hacker's $9,561.90 fraudulent EFT or the $9.651.90 unauthorized EFT by Money Network.

31.	On May 28, 2024, Plaintiff submitted yet another Customer Dispute Form regarding the incorrect reversal of the $9,561.90 from Plaintiff's First Alabama Account, instead of the Hacker Account.   On the same day, she also emailed the dispute department at Money Network advising them that she has tried numerous times to explain the situation over the phone to its customer service representatives to no avail.

32.	Money Network assigned the new dispute with Dispute Case ID - CMS202405280611063230.

33.	On May 29, 2024, Plaintiff closed the Money Network Account.  Money Network

7

then issued a paper check to her in the amount of $11,255.76. Of that amount, $9,561.90 was the funds wrongfully extracted by Money Network from Ms. Walker's First Alabama Account. The end result is that Ms. Walker was never credited the $9,651.90 fraudulent EFT initiated by the hackers.

34. On June 4, 2024, Plaintiff emailed the dispute department at Money Network asking for an update on the claim. Money Network did not respond.

35. On June 14, 2024, Plaintiff wrote a letter to Money Network explaining the situation in detail, including the mistaken reversal from her First Alabama Account. Money Network did not respond and has refused to take any further action.

## COUNT I
## (VIOLATION OF ELECTRONIC FUNDS TRANSFER ACT)

36. The allegations stated in Paragraphs 1 through 35 above are incorporated as if fully asserted herein.

37. This is a claim asserted against Defendant for violation of the federal Electronic Funds Transfer Act 15 U.S.C. §§ 1693 *et seq.* (the "EFTA").

38. Plaintiff is a "consumer" as defined in 15 U.S.C. § 1639a(6).

39. Defendant is a "financial institution" as that term is defined in 15 U.S.C. § 1639a(9).

40. The transactions which extracted funds from Plaintiff's Money Network account on May 8, 2024 without her knowledge or authority were each "unauthorized electronic transactions" as that term is defined in 15 U.S.C. § 1639a(8) and constitute an "error" within the meaning of 15 U.S.C. § 1693f(f).

41. Plaintiff provided prompt and reasonable notice to Defendant of the unauthorized

transactions. Plaintiff's notice constitutes notification of error within the meaning of 15 U.S.C. § 1693f(a).

42. Pursuant 15 U.S.C. § 1693g, Plaintiff is not liable for any of the unauthorized charges or, in the alternative, liable only in the amount of $50.00. She did not initiate, authorize, know about or benefit from any of the transactions. Moreover, Plaintiff provided sufficient information to Defendant to establish that she was not liable for the unauthorized transactions and Defendant has not met and can not meet its burden of establishing that the transactions were authorized.

43. Defendant violated the EFTA by failing to provide credit for the unauthorized transactions and by failing to conduct any reasonable or good faith investigation of the fraudulent and unauthorized EFTs. Defendant had no reasonable basis for its determination not to take action to reverse its unauthorized extraction of funds from Plaintiff's First Alabama Account and not to take further corrective action in response to Plaintiff's claim.

44. Defendant knowingly and willfully reached determinations with respect to Plaintiff's claim and the unauthorized and fraudulent EFTs described herein which could not reasonably have been drawn from the evidence available to Defendant at the time of its investigation.

45. Defendant also violated the EFTA by initiating an unauthorized EFT from Plaintiff's First Alabama Account and by failing to reverse or credit that EFT.

46. Defendant also violated the EFTA by failing to timely and reasonably investigate Plaintiff's notifications of error and by failing to provide adequate written response to her notifications.

47. Defendant knowingly and willfully reversed the transaction from Plaintiff's own bank account, although it had access to the account information the fraudulent transactions were transferred to.

48. All of the acts and omissions made by Defendant in violation of the EFTA occurred within one year prior to the filing of this action.

49. As a proximate result of Defendant's violations of the EFTA, Plaintiff has suffered actual damages, including loss of funds, loss of access to funds, mental and emotional pain, fear, distress and anguish.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

A. Actual damages, including damages for mental and emotional pain, distress and anguish, humiliation and embarrassment;

B. Statutory damages pursuant to 15 U.S.C. § 1693m;

C. Treble damages pursuant to 15 U.S.C. § 1693f(e);

C. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3); and

E. Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT II
## (NEGLIGENCE)

50. Plaintiff realleges and incorporates Paragraphs 1 through 35 as if fully set out herein.

51. Defendant owed duties of reasonable care to Plaintiff at all relevant times. These include a duty to take reasonable actions to prevent fraudulent transactions, including EFTs, from

Plaintiff's Money Network Account and the duty to reasonably investigate claims that fraudulent or unauthorized charges were made. These duties also include the duty to take reasonable steps to reverse any charge which any reasonable investigation would determine to be fraudulent or unauthorized. These duties arise from the operation of law and from federal statutes and regulations, including the EFTA and its implementing regulations.

52. Defendant breached the duties owed to Plaintiff.

53. Defendant's acts and omissions with respect to the unauthorized and fraudulent transactions made from her Money Network Account and the unauthorized reversal from her First Alabama Account constitute negligence. Defendant also negligently failed to properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for negligence and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT III
## (WANTONNESS)

54. The allegations stated in Paragraphs 1 through 35 above are incorporated as if fully asserted herein.

55. Defendant's actions taken in connection with Plaintiff's account constitute wantonness. Defendant had a duty by law, including but not limited to the requirements of the EFTA and its implementing regulations, with respect to the management of Plaintiff's account and responding to any report of unauthorized transactions. That duty included, but is not limited to, the duty to conduct a reasonable and good faith investigation of the reported fraudulent

11

transactions and to provide credit for those transactions in the absence of any credible evidence that the transactions were in fact authorized. Moreover, Defendant had a duty to act reasonably in immediately safeguarding the account and providing Plaintiff with a reasonable and safe means of accessing her remaining funds.

56. Defendant wantonly failed to perform its duties with respect to Plaintiff's account and her dispute. Defendant's acts and omissions described herein were made in dereliction of its legal duties and with wanton, reckless or conscious disregard for the Plaintiff's rights and well-being.

57. Plaintiff has suffered damage as a proximate result of the wantonness of Defendant.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for wantonness and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

## COUNT IV
## (CONVERSION)

58. The allegations stated in Paragraphs 1 through 35 above are incorporated as if fully asserted herein.

59. Defendant's unauthorized EFT from Plaintiff's First Alabama Account on or about May 8, 2024, which reversed her transfer in the amount of $9,561.00, constitutes wrongful possession and wrongfully denied Plaintiff access to identifiable funds belonging to her. That transfer and Defendant's refusal to reverse that transfer constitute conversion.

60. Plaintiff has suffered damage as a proximate result of the wantonness of Defendant.

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant for

conversion and award Plaintiff compensatory damages, including damages for mental anguish and emotional distress; and punitive damages, plus interest and costs.  Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

Respectfully submitted this the 3rd day of April, 2025.

_____
KENNETH J. RIEMER (RIEMK8712)
RIEMER LAW, LLC
*Attorney for Plaintiff*
2153 Airport Boulevard
Mobile, AL  36606
Telephone: (251) 432-9212
E-mail: KJR@Riemer-Law.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

**First Data Corporation, n/k/a Fiserv,
d/b/a Money Network**
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL  36104